| | | | |
|---|---|---|---|
| | AUSA: Sara Woodward | Telephone: | (313) 226-9100 |
| AO 91 (Rev. 11/11) Criminal Complaint | Special Agent: Christopher Szczygiel | Telephone: | (313) 965-2323 |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

United States of America
v.
TREMAINE JAMES WOODALL

Case No. Case: 2:20−mj−30281
Assigned To : Unassigned
Assign. Date : 8/6/2020
Description: CMP USA v. SEALED MATTER (SO)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 1, 2020 to July 1, 2020__ in the county of __Wayne and Elsewhere__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1591 | Sex trafficking of a minor, and sex trafficking using force, fraud, and coercion |

This criminal complaint is based on these facts:
See attached AFFIDAVIT.

☑ Continued on the attached sheet.

_Complainant's signature_

Christopher Szczygiel, Special Agent (FBI)
_Printed name and title_

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __August 6, 2020__

_Judge's signature_

City and state: __Detroit, Michigan__    Hon. Anthony P. Patti, United States Magistrate Judge
_Printed name and title_

## Sex AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

### INTRODUCTION

I, Christopher Szczygiel, being duly sworn, depose and state the following:

1.  I am employed by the Federal Bureau of Investigation as a Special Agent and have been for approximately twelve years. I currently work on the Southeast Michigan Trafficking and Exploitation Crimes (SEMTEC) Task Force. I have experience investigating child sexual exploitation and human trafficking crimes and have also been trained specifically on these types of investigations. I have consulted with numerous other SEMTEC agents, including those that have worked on human trafficking investigations for many years.

2.  This affidavit is made in support of an application for a criminal complaint and arrest warrant for **TREMAINE JAMES WOODALL** (DOB 08/XX/1997) for violations of 18 U.S.C. § 1591 (sex trafficking of a minor, and sex trafficking using force, fraud, and coercion).

### PROBABLE CAUSE

3.  On June 24, 2020, the Gwinnett County Sheriff's Office (Georgia) received a tip that an unknown female with phone number (313) 4XX-21XX was being

trafficked against her will at a brothel in the Atlanta, GA area. The tipster also stated that there were several other girls being trafficked at the same location.

4. On June 30, 2020, Gwinnett County Sheriff Officers placed an undercover phone call to (313) 4XX-21XX to solicit a commercial sex date. The unknown female who answered the call said she was willing to meet for sex and instructed the officer to meet her at "20000 Harper." After determining that "20000 Harper" is the Parkcrest Inn located at 20000 Harper Ave in Harper Woods, Michigan, the Gwinnett County Sheriff's Officer contacted SEMTEC.

5. That same day (June 30, 2020), an undercover SEMTEC officer contacted 4XX-21XX to solicit a sex date. Again, an unknown female answered the call and agreed to meet and stated that she was in the city of Harper Woods.

6. A SEMTEC Intelligence Analyst completed a search of law enforcement databases for phone number (313) 4XX-21XX and informed your affiant that the Warren (MI) Police Department was also conducting an investigation related to phone number (313) 4XX-21XX. Your affiant coordinated with the Warren PD and found out that there was a team of law enforcement officers conducting surveillance at the Parkcrest Inn.

7. On July 1, 2020, your affiant contacted the surveilling officers on scene who had obtained a search warrant for Room 48. Warren PD executed the search warrant and upon clearing the room, allowed SEMTEC members to enter.

8.     Upon entry into the room, SEMTEC members encountered one 17 year-old victim (hereinafter MV-1) and one 16 year-old victim (hereinafter MV-2).

9.     On July 30, 2020, MV-1 was interviewed by an FBI child-adolescent forensic interviewer. During the interview, MV-1 stated the following:

    a. MV-1 was friends with Woodall on Facebook. MV-1 stated that Woodall made a post on Facebook indicating that he was going to take a trip to Atlanta, GA. MV-1 hit the "like" button on his post, and shortly after, Woodall messaged MV-1 asking if MV-1 would like to go to Atlanta with him. MV-1 replied to Woodall indicating that she was interested in going.

    b. A couple of days later, Woodall messaged MV-1 and stated that he was driving to Atlanta and was coming to pick her up. Woodall picked up MV-1 and then proceeded to drive to Atlanta with Woodall's cousin (hereinafter UM-1), MV-2 and a third minor victim (hereinafter MV-3). During the drive, Woodall told the three minor victims that they were going to work and make money, but did not specify what type of work they would be doing.

    c. Once in Atlanta, UM-1 dropped off Woodall and the three minors at a large, five-bedroom house where Woodall and his girlfriend were staying.

d. At the house, Woodall called the three minor victims in a room and told them that they would be making money by engaging in commercial sex dates. Woodall further stated that they would each be required to first have sex with him and let him take explicit photos and videos to post in the online advertisements for commercial sex. Woodall's girlfriend was present for this conversation. Woodall stated that she approved of him having sex with each of the victims.

e. Woodall told MV-1 that she would be the first of the three minors to have sex with him. MV-1 and Woodall then went in a room and had sex, while Woodall took pictures and videos of the sex acts using his cell phone.

f. Woodall posted commercial sex ads for MV-1 on the websites Megapersonals and Listcrawler. The ads listed her name as "Blossom" and contained her cell phone number, (313) 4XX-21XX and the photos and videos which Woodall took while they had sex.

g. MV-1 and the other two victims engaged in commercial sex dates on a daily basis for approximately two weeks. Woodall placed a small table in the hallway outside of the rooms where the sex dates were occurring and instructed the girls to place the money collected from the dates on the table. Woodall told that the victims that they were not done working for the day until there was a total of approximately $1900 on the table.

h. Woodall told the victims that for every two days of work completed, he would reward them by taking them shopping or buying them a gift. In addition, he told the girls that they would each get a payment of $2000 after their trip in Atlanta was complete. MV-1 stated that she never received any money from Woodall and was only given rewards on one or two occasions. MV-1 further stated that Woodall kept all of the proceeds from the commercial sex dates and spent portions of the money on gifts for his girlfriend.

i. While in Atlanta, Woodall called MV-1 and MV-3 into a room where they observed MV-2 crying with her face covered in blood. Woodall told MV-1 and MV-3 that he physically assaulted MV-2 because she was not replying to text messages she was receiving from men responding to her ads for commercial sex. Woodall further stated that he would do the same to MV-1 and MV-3 if they did not respond to their text messages.

j. MV-1 described another incident in which Woodall forced the three minor victims to clean his bedroom. While cleaning, MV-1 told Woodall that she did not want to clean his room and was not his personal maid. Woodall responded by slapping MV-1 across the face.

k. MV-1 also described a third incident in which Woodall called all three girls into a room and told them that he was missing $40. He then forced each

girl to strip naked to prove they were not hiding the money. Woodall told the victims that they had one hour to come up with $40 or else he was going to return and physically beat them. MV-1 stated they looked for the money but could not find it, so she instead gave a pre-paid credit card to Woodall which contain $40 so that he would not harm them.

l. After approximately two weeks in Atlanta, MV-1 returned to Michigan with Woodall, his girlfriend and MV-2. MV-3 fled the house in Atlanta with the help of her sister who lived in the nearby area.

m. Once in Michigan, Woodall rented two rooms at the Parkcrest Inn, 20000 Harper Ave, Harper Woods, MI. MV-1 and MV-2 stayed in one room and Woodall stayed in the other room with unknown individuals. While at the Parkcrest Inn, Woodall had MV-1 and MV-2 engage in commercial sex dates for approximately two days, until they were recovered by law enforcement on July 1, 2020.

n. MV-1 stated that she wanted to leave Woodall and stop engaging in commercial sex on multiple occasions, however, she kept doing it in hopes that she would receive the $2000 Woodall had promised her.

10. Your affiant conducted an open internet search of the MV-1's phone number (313) 4XX-21XX. Results from the search showed multiple advertisements in both the Atlanta and Detroit areas for "Blossom" with pictures and videos depicting MV-

1. The advertisements appear to have been posted in June 2020, with the most recent advertisement posted on July 1, 2020.

11. Your affiant reviewed Parkcrest Inn security camera video recorded on July 1, 2020, a few hours prior to the victims being recovered. The footage showed a male resembling Woodall walking around the motel premises and entering the same room from which MV-1 and MV-2 were recovered.

## CONCLUSION

12. For the reasons set forth above, I believe probable cause exists that **TREMAINE JAMES WOODALL** violated 18 U.S.C. § 1591 (sex trafficking of a minor and sex trafficking by force, fraud, and coercion).

_____
Christopher Szczygiel
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence
and/or by reliable electronic means.

_____
ANTHONY P. PATTI         August 6, 2020
UNITED STATES MAGISTRATE JUDGE